### MILLER v. COMMANDING OFFICER, CAMP BOWIE, TEX.

Civ. A. No. 1264.

District Court, N. D. Texas, San Angelo Division.

Nov. 18, 1944.

Charles S. McCombs, of Dallas, Tex., for petitioner.

Clyde G. Hood, Asst. U. S. Atty., and Lieutenant George P. Red, both of Dallas, Tex., for respondent.

ATWELL, District Judge.

The petitioner presented an application for a writ a short time before the present petition was filed. I refused the first petition, because it contained allegations and a prayer for a large amount of damages against Army officers, and other extraneous matter. When the present petition reached me it was also inartistically drawn, but it did allege an illegal restraint and a kidnapping and imprisonment by the Army.

A rule was issued and later counsel was appointed at the request of the petitioner.

The Selective Service Board for Cook, Nebraska, where the petitioner resided, ordered him to report for induction, after various preliminary steps provided for by that Act had been taken by the Board and by the petitioner. The petitioner's objections centered around a claim of conscientious convictions. Those objections were decided against him by the Boards having jurisdiction over such questions and he was ordered to report for induction.

He complied with that order but contends that he did not take the oath. His service record shows that "he was inducted." It also shows that he refused to take the oath of allegiance.

When this hearing began, witnesses who were called were asked to stand and be sworn by the clerk. The petitioner refused to be sworn, and he was permitted to affirm.

The testimony further discloses that he has served in the Army for approximately three years. During that time, at his re-

quest, he has been given non-combative duty. He has drawn the salary, he has had a number of furloughs from five to eleven days each, and a number of passes for three days each. His conduct has been good, and he has been promoted from a private, a number of times, until he reached the position of Sergeant. He was then demoted, and was afterward again promoted. At present he is a clerk. He has not been required to carry a gun. He has worn the uniform during the entire time, with insignia showing the rank that he has enjoyed.

He comes from Camp Bowie, where he is at present located, to Dallas, to consult his attorney.

During his service he has been at Fort Leavenworth, Kansas; Camp Warren, Wyoming; Fort El Reno, Oklahoma; Camps Howze, Barkeley and Bowie, in Texas.

He has never been under lock and key, nor in jail, nor in the stockade, nor restrained by force. He has had the same liberty as other soldiers in the respective organizations with which he has been connected. He was awarded a good conduct medal. He made no complaint to the Inspectors General when they visited the camps where such complaints could have been made without supervision or espionage. He has franked his mail.

Several officers and soldiers with whom he has associated during the performance of his duties, testify that they know of no discrimination, nor threats, nor of any treament that was injurious to the petitioner's health.

In his petition he prays that the court give him an honorable discharge from the United States Army, and advises the court that he should be protected from prosecution under the Selective Service Act, 50 U.S.C.A. Appendix § 301 et seq., since the statute of limitation, "has run against any offense under that Act."

■ Looking first at his prayer, we know, of course, that the court has no power to discharge from the Army, either dishonorably, or honorably. His conception of the statute of limitation as to violations against the Selective Service Act is erroneous, because that Act provides for a continuous violation if failure to do as ordered is persisted in from day to day.

■ Next, we consider the doctrine announced in a number of authorities that there is such a thing as a constructive induction. An induction that arises from the acts of the inductee, and is brought about by his demeanor, activities, consent and requests. The service record shows that "he was inducted." That induction is provided for in the regulations of war and includes an oath. He testifies that he did not take the oath. His subsequent activities for three years, which are set out above, somewhat summarily, but supported fully in the testimony, would indicate that the recital in his service record, that "he was inducted," is correct. That whatever acts were necessary for that consummation, took place.

The same service record also shows that the petitioner refused to take "the oath of allegiance." My information is that, the "oath of allegiance" is the oath of enlistment. I am also informed that after taking the oath of allegiance, which succeeds examination and other steps, the selectee is informed that he is a member of the Army of the United States, and is given an explanation of his obligations and privileges. That, in the event he refuses to take the oath, he will not be required to receive it, but will be informed that this action does not alter in any respect his obligation to the United States. Mobilization Regulations No. 1–7, October 1, 1940, which were in effect on the date of petitioner's induction.

■ Induction, therefore, is not dependent upon the taking of the oath. If the selectee refuses to take it, and if he fills the other requisites, he is, neverthless, informed that he is "now a member of the Army of the United States."

Thus, the Army seems to have prevented the formation of a rather dangerous loop-hole. Where the Draft Board orders a selectee to report for induction and the inductee does so, and the preliminary steps are taken by the proper officials of the Army, and the draftee accepts, and is informed that he is in the United States Army, whether he has taken the oath or not, and engages in Army activities of his own choice, accepting the privileges, such as this case exposes, a prosecution by the civil authorities for failing to obey an order would be rather ineffective. Because the selectee would not have refused to obey an order of the Board which subjected him to civil prosecution. The record of the Army would show that he had been in-

ducted. That he had obeyed the order of the Board to report for that purpose. A successful prosecution in a civil court would be quite doubtful. The Army procedure and the selectee's subsequent actions make him amenable solely to military jurisdiction. Having satisfied its requirements, no restraint other than moral restraint is shown.

As already suggested, moral restraint is not such an "illegal restraint" of one's liberty as habeas corpus can relieve against. It is the restraint which holds men and women to a decent life. It is the power of the moral world in operation and no one is free from it. Freedom from such restraint would mean a lapse into savagry.

Fundamentally, there is no basis for the issuance of the writ of habeas corpus. He has been at liberty to go and come. He is and has been at all times, free, save and except for such army regulations as all others are under. He has drawn his pay, received a number of promotions, enjoyed a great many furloughs and passes and has performed the sort of duty that he himself chose and requested.

I find that he has not been and is not now, restrained of his liberty and I do not think it appropriate to disturb his status. Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277; Smith v. Richart, D.C., 53 F.Supp. 582.

The cases of Billings v. Truesdell, 321 U. S. 542, 64 S.Ct. 737, Ex parte Yost, D.C., 55 F.Supp. 768, and In re Herman, D.C., 56 F.Supp. 733, are in harmony with this idea, as each showed actual restraint.

The oath is not mentioned by the Congress. The oath is a regulation of the Army. Just what the Army shall determine places one within it is exclusively and solely within its power. The Congress merely determines the civil jurisdiction before induction, and the military jurisdiction after induction.

His three years apparent contentment and requests and promotions and pay, substantiate the statement that "he was inducted." It must be assumed, in the absence of a contrary showing, that the officers charged with his induction took such steps for it as they were bounden to take under the Army regulations.

Judgment may be drawn saving such exceptions as the petitioner desires.