UNITED STATES, Appellee

v

LEONARD G. SCOTT, Private, U. S. Army, Appellant

11 USCMA 655, 29 CMR 471

No. 13,937

Decided July 15, 1960

First Lieutenant Jerome D. Meeker argued the cause for Appellant, Accused. With him on the brief was Lieutenant Colonel Ralph Herrod.

First Lieutenant Alvin B. Fox argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel James G. Mc-

*Conaughy, Major John G. Lovrien, First Lieutenant Harvey L. Zuckman, and First Lieutenant Avram G. Hammer.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

At the time the accused enlisted in the United States Army, he had just passed his seventeenth birthday. He served satisfactorily and without incident for some six months, at which time he was charged with having committed the offense of taking indecent liberties with a thirteen-year-old boy, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The offense occurred on August 1, 1959, and charges were preferred on the twelfth day of that month. On or about September 1, 1959, the appellant's parents executed affidavits to the effect that they had not consented to the accused's enlistment in the Army, and they expressed in the documents a desire to have him released from the service. The affidavits were forwarded to defense counsel, but they had not been received at the time of trial which was commenced on the 8th day of September 1959. However, their failure to arrive was of no material importance, for trial counsel stipulated to their contents. Based on the desire of the parents, a motion was made by defense counsel to dismiss the proceedings because of lack of jurisdiction. For reasons which will hereinafter appear, the motion was denied properly, and the parties proceeded to trial. Accused was found guilty and sentenced to a bad-conduct discharge, total forfeitures, confinement at hard labor for one year, and reduction to the lowest enlisted grade. The convening authority approved, but a board of review, after affirming the findings, reduced the period of confinement to six months and with that modification found the sentence appropriate. We granted accused's petition for review to consider the question of jurisdiction.

The facts which we believe control the disposition of the granted issue are these. Accused enlisted on January 30, 1959. He testified that, although his application for enlistment carried the purported signatures of his father and mother, they were forgeries. He averred he paid five dollars to some person in the post office to sign for his father, and he importuned his sister to forge his mother's name. The service had no knowledge of the false signatures and, so far as the official records show, he enlisted and was accepted by the Army in good faith on the date above mentioned. He reported for basic training, was issued uniforms, and thereafter received pay and allowances from the Army. Sometime in March 1959, he wrote his parents and informed them of his unit designation and the post at which he was stationed. Other letters were dispatched to them, and accused received replies addressed to him in care of his unit at military installations. He went home on military leave on April 11, 1959, and thereafter received letters from his parents addressed to him at Fort Bragg, North Carolina. He made a Class "E" allotment of $25.00 per month to them, which was in effect at the time of the request for discharge. As previously indicated, the alleged crime was committed on August 1, 1959. Charges were preferred on August 12, 1959. Thereafter, the pretrial investigation was held, and on the 17th of August 1959, the charges were referred for trial to a general court-martial, on which date defense counsel submitted a request for a delay in the case. Insofar as the record is concerned, the first action taken by his parents to question accused's enlistment came to light on September 8, 1959, when a letter signed by defense counsel was forwarded to the convening authority which contained an assertion that the parents did not consent to the enlistment of the accused and a request that the charges be withdrawn. From the time of signing the contents and the handling of the affidavits, it is fairly inferable that they were executed solely for the purpose of helping the accused avoid criminal prosecution. And significantly, they are narrowly drawn and do not aver that the parents were unaware that their son had enlisted in the Army over

656

seven months prior to the date of the instruments or that they had ever considered requesting accused's discharge until they learned of his difficulty.

The Government seeks to support jurisdiction over the accused on two grounds; namely, that the parents consented to the enlistment and, if that be not established, that their efforts to obtain release of the accused came too late as he was being held for trial for the commission of a serious offense. Our resolution of the first question in favor of the Government makes it unnecessary to discuss the second assertion.

By virtue of its power to raise and support military forces, to provide and maintain them and make █ rules to govern them, Congress may require military service of minors. Pursuant to its authority, Congress enacted a statute which made it legal for minors between 17 and 18 years of age to serve in the Army provided the parents consented, 10 USC § 3256. In United States v Overton, 9 USCMA 684, 688, 26 CMR 464, we had this to say about the nature of the contract when a minor over 17 and under 18 years of age enlists without the prior consent of his parents:

"At the time of accused's enlistment, a male over the age of seventeen had legal capacity to serve in the Army. If he was between the ages of seventeen and eighteen, he was required to have the written consent of his parents or guardian. Act of June 28, 1947, 61 Stat 191, 10 USC § 628 (repealed and re-enacted in August 1956 as 10 USC § 3256). But an enlistment without such written consent is not void. Under the statutes, a non-consenting parent can apply for the enlistee's discharge, but the enlistee himself has no right or privilege to terminate his service. As far as he is concerned, his military status is not subject to his personal desire or wish. As the United States Supreme Court pointed out, the right to apply for discharge because of nonconsent 'is for the benefit of the parent or guardian . . . but it gives no privilege to the minor.' Morrissey v Perry, 137 US 157, 34 L ed 644, 11 S Ct 57.'"

Under the principle enunciated by the above-quoted authority, the contract is voidable and not void and █ the right to apply for discharge runs to the parents. However, that is a right which may be waived and if by their acts and conduct parents ratify the contract, they forfeit the privilege thereafter to require the minor's discharge. In the instant case, we are sure that the record establishes unequivocally that the parents of this accused acquiesced in and profited from the enlistment, and untimely failed to exercise the option to terminate the relationship available to them until such time as the accused became enmeshed in the law and the benefits running to them from his enlistment appeared to be in jeopardy. In that situation, we believe the following language found in Ex parte Dostal, 243 Fed 664 (ND Ohio), is appropriate:

"Furthermore, the written consent required of the parents or guardian of a minor is primarily for the benefit of such parents or guardian. It is designed, not merely to protect an immature minor from improvident action, but to preserve the parent's or guardian's right to his custody and service. The parent or guardian may undoubtedly waive the requirement that the consent be in writing. This written consent may undoubtedly be given after, as well as at the time of, the enlistment. It follows, as a consequence, that the parent or guardian may, by acquiescence, with knowledge, after the enlistment, waive all right to relief because written consent was not previously given. This waiver will result from silence or acquiescence while a minor is continuing in the service and drawing pay from the government."

In support of our conclusion that the parents of the accused waived their right to rely on lack of consent, we mention that we are confronted with a record which shows that his parents—who at least as early as March, several months before this offense was committed and accused became caught up in the toils of the law—knew their seventeen-year-old son was in the Army and

**657**

yet took no action to notify Army officials of their lack of consent. During this period, he visited them on military leave and corresponded with them from his various duty stations. They allowed him to remain on the rolls of the Army and draw pay and allowances throughout this entire period, and during part of that time they were participating in his earnings to the extent of $25.00 per month. These facts show a complete parental acquiescence in accused's change of status and a satisfaction with his entry into the service. Their belated attempt to return him to civilian life was bottomed on a desire to help him avoid prosecution—a natural interest on their part which we do not criticize but which is not legally sufficient to terminate the military relationship once it has been established that the parents either expressly or impliedly consented to or ratified the contract of enlistment. Here all the facts and circumstances point unerringly to a consent or ratification in law which probably would never have been questioned had the accused continued to serve honorably.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.