**UNITED STATES, Appellee,**

v

**LEONARD A. BEAN, Private,
U. S. Army, Appellant**

13 USCMA 203, 32 CMR 203

No. 15,809

July 27, 1962

*First Lieutenant David M. Gill* argued the cause for Appellant, Accused. With him on the brief was *Captain Vernon C. Maulson.*

*Captain Stanley M. Wanger* argued the cause for Appellee, United States. With him on the brief was *Major Francis M. Cooper.*

KILDAY, Judge:

An altercation in the messline of a unit stationed at Darmstadt, Germany, resulted in a stabbing. Multiple penetrating chest wounds inflicted by a knife, wielded by the accused, caused the victim's death. Accused was, consequently, brought to trial before a general court-martial on a charge of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. He pleaded not guilty but, although the court acquitted him of the offense charged, it convicted him of the included lesser crime of voluntary manslaughter, contrary to Article 119 of the Code, 10 USC § 919. The court-martial sentenced accused to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for ten years.

Intermediate appellate authorities affirmed the findings and sentence, and accused thereafter sought review in this Court. We granted his petition on a single jurisdictional issue, to determine whether he was amenable to prosecution by court-martial.

The limited question before us renders a recitation of the circumstances relative to this tragedy unnecessary. Our sole concern is the validity of the contention asserted by the defense at trial, repeated at subsequent appellate levels, and assigned as error before this Court. Their position is that accused was a civilian minor without military status and over whom the court-martial had no jurisdiction.

With regard to that matter, the facts show that accused was born on May 31, 1943. He enlisted in the Army on June 10, 1960, shortly after his seventeenth birthday, with the consent of one Mrs. Ethel Turner. She signed as his legal guardian, listing her relationship as "loco parentis," and stating he had lived with her for eight years and that the address of neither natural parent was known to her. The offense here involved was committed on February 28, 1961, and four days later, on March 4th, a charge of murder was preferred against accused. On March 23, 1961,

the convening authority initially referred that charge for trial by general court-martial and the case was ultimately tried under a later endorsement dated April 7, 1961.

In a letter addressed to the commanding general exercising general court-martial jurisdiction over accused, dated April 23, 1961, accused's mother stated she was previously unaware of her son's enlistment in the Army and demanded his immediate release from the service. Accused's father had written a virtually identical letter on April 18, 1961. The convening authority declined to release accused pending disposition of the charges, and on May 3, 1961—still four weeks prior to accused's 18th birthday—trial commenced.

The evidence affirmatively reflects that, as a member of his unit in Germany during February, March, and April of 1961, accused served and was paid, fed, clothed, equipped, and billeted as a soldier. And it would further appear—certainly it is not denied—that he likewise earlier performed military duties and received benefits from the time he took his oath of enlistment.

With regard to accused's situation prior to his enlistment, it appears from the record that his parents were divorced in March of 1944 by decree of an Illinois court, and that his mother was awarded custody of him. Thereafter, in 1951, accused's mother arranged with the before-mentioned Mrs. Turner—who resided in Missouri—to take care of her son. It was agreed Mrs. Turner would receive $10.00 per week toward the child's support. From that time until the date of his enlistment accused lived with Mrs. Turner. Appellate Government counsel and counsel for the defense are in sharp disagreement as to the relationship established under that arrangement, the defense denying that there was in any way a permanent transfer of custody or control to Mrs. Turner by accused's natural mother. The facts show, however, that the latter last saw her son in 1956, and that since she was divorced from accused's father she had been

married three times and had moved on several occasions. She left Illinois and had resided, since 1956, in the West, in Washington, Alaska, and California.

There is also dispute as to when accused's mother last contacted him or Mrs. Turner. The latter claimed she last heard from or received any support money from the mother in 1958. At that time, according to Mrs. Turner, accused's mother apprised her she was moving and instructed her not to write until the mother contacted her. Mrs. Turner received no new address. On the other hand, accused's natural mother asserted her support payments —which she claimed to have made when able, although admittedly she had not always kept them up—did not cease until December of 1959. In any event, it is clear there was no contact whatever between the parties after the last mentioned date, and at no time since accused was turned over to Mrs. Turner did his natural mother in fact exercise any real custody or control over him.

One other matter warrants mention. The record shows that shortly before his enlistment, accused was involved in some rather serious trouble. As a result, he came before the Juvenile Division of the Circuit Court of St. Louis County, Missouri. On April 5, 1960, that court stayed execution of commitment of accused for his wrongdoing, and ordered him "placed in the custody of [Mrs.] Ethel Turner under supervision of the Juvenile Officer."

Section 3256 of Title 10, United States Code, is pertinent to the situation posed by the above facts. It permits enlistment in the Army of males not less than seventeen years of age, prescribing the following limitation:

". . . However, no male person under 18 years of age . . . may be originally enlisted without the written consent of his parent or guardian, if he has a parent or guardian entitled to his custody and control."

Further, 10 USC § 3816 provides that:

"Upon the application of the parents or guardian of a regular enlisted member under 18 years of age who enlisted without the written consent of his parents or guardian, the Secretary of the Army shall discharge the member with the pay and form of discharge certificate to which his service entitles him."

The present case is not the first instance where this Court has dealt with this area of the law. We ▮▮▮▮ ▮ have treated with these ▮▮▮▮ ▮ provisions regarding enlistments, and their precursors, on prior occasions. United States v Blanton, 7 USCMA 664, 23 CMR 128; United States v Overton, 9 USCMA 684, 26 CMR 464; United States v Scott, 11 USCMA 655, 29 CMR 471. As those cases point out, one under age seventeen is incompetent under the present law to acquire military status in the Army.[1] It is also clear that the enlistment of a seventeen-year-old in the Army, without the written consent required by the Federal statute, is not void, but merely voidable at the option of a nonconsenting parent under appropriate circumstances.

Appellate defense counsel contend here that Mrs. Turner was not a guardian in the sense of the above statutes, and hence that her purported consent to accused's enlistment was ineffectual. Accordingly, it is urged that accused's minority enlistment, being without the requisite parental consent, was voidable; that his parents were entitled to demand his release from the service; that, before accused's eighteenth birthday, such release had in fact been demanded by his mother, who was entitled to his custody; and, therefore, that the court-martial was without jurisdiction over accused. For those reasons, so the argument proceeds, the findings against accused and his sentence are a nullity; the same should be set aside, and this Court should order the proceedings dismissed.

Counsel for the Government, on the other hand, assert that jurisdiction should be sustained. They base their argument, in part, on the voluntary agreement between accused's mother

---
[1] Cf. 10 USC §§ 5532–35, 6293, and United States v Reese, 9 USCMA 205, 25 CMR 467, a Navy case.

and Mrs. Turner; the latter's sole care, custody, and control of him for some nine years prior to his enlistment; the Missouri juvenile court decree; and the virtual abandonment of accused by his mother. In view of those factors they urge that Mrs. Turner was competent, under the Federal statute, to consent to and validate accused's enlistment. Further, it is argued that regardless of Mrs. Turner's competency, accused's mother—although awarded his custody under the Illinois divorce decree—was not entitled to his custody and control at the time of his enlistment and, therefore, was not herself authorized to grant the consent required by the statute. Thus, it is urged, it cannot be said the court-martial lacked jurisdiction because of lack of consent by one not qualified to grant the same.

Although it might be, under the peculiar circumstances of the case at bar, that Mrs. Turner's consent to accused's enlistment satisfied the requirements of 10 USC § 3256, supra, we need not rest our decision on that basis. The defense strongly maintains that conclusion is invalid, but it is unnecessary to consider the matter, for this case would require that we reach another and more important question even were we to rule that accused's enlistment was voidable and that his mother had standing to void the same.

In United States v Scott, supra, referring to decisions in the Federal courts, we noted that parents of a seventeen-year-old enlistee, not having given the requisite written consent, may nonetheless forfeit the privilege to demand the minor's discharge by knowingly acquiescing in and profiting from his enlistment. Under such circumstances, an implied consent or ratification bars them from relying on want of written consent. Of course, that situation is not present here. For aught this record shows the parents knew not of accused's enlistment and, even though their son continued in the service and drew pay from the Government, they had not acquiesced in·his enlistment nor received benefit therefrom at such time as they demanded his release.

But we also adverted in the *Scott* case, although we did not base our decision thereon, to an additional consideration—that the efforts by the parents to obtain release of their son "came too late as he was being held for trial for the commission of a serious offense." Prior to *Scott*, the facts had divided this Court in the application of that exception in United States v Overton, supra. In the last-mentioned case the majority found, with regard to one of several factors bearing on jurisdiction, that the minor's mother expressed displeasure with his enlistment as soon as she learned thereof and before he first was caught up in the toils of the law. Under the circumstances, including her obviously limited background, it was determined that through the mother's conversations with her son and his company commander, and inquiries at his draft board and with personnel at a recruiting office, she had attempted to take affirmative and timely action to terminate his status as a soldier. Accordingly, and in light of other considerations, it was held in *Overton* that the court-martial lacked jurisdiction over the accused at the time of trial.

In the present case, unlike *Overton*, supra, a charge of murder had been preferred against accused and referred for trial before any action was attempted with a view to voiding his enlistment. Thus, we are faced squarely with the question whether, under those circumstances, Army authorities were bound to terminate accused's military status as a minority enlistee.

The authorities dictate a negative answer. Allen v Wilkinson, 129 F Supp 73 (MD Pa) (1955), was a *habeas corpus* proceeding involving fraudulent enlistment by a minor. The then extant statute—10 USC § 628, Act of June 28, 1947—gave nonconsenting parents the same right to set aside the enlistment of a minor as do the present Federal provisions quoted hereinbefore. The court's opinion notes, at page 76, that:

". . . the overwhelming weight of authority is that neither a minor

**206**

soldier or his parents, even where no consent has been given, may void such an enlistment or effect the release of such soldier when he is held for a military offense or is under sentence for a military offense."

Indeed, the host of authorities cited by that court in footnote 11 to its opinion, and others, demonstrates the rule is well settled and of long standing that a minor serving under a voidable enlistment need not be separated, certainly not on his own application, and neither on that of his nonconsenting parents or guardian, until released from a prosecution pending against him. Thus, in Ex parte Dunakin, 202 Fed 290, 292 (ED Ky) (1913), the court concluded that:

". . . the overwhelming weight of authority is against her right. In the following cases it has been held that the parent or guardian of a minor 16 years of age or over [the controlling age under the then extant statute], who has enlisted without consent, is not entitled to his custody when held for a military offense, and not simply under his enlistment: In re Cosenow (CC) 37 Fed 668; In re Kaufman (CC) 41 Fed 876; In re Dowd (DC) 90 Fed 718; In re Miller, 114 Fed 838, 52 CCA 472; United States v Reaves, 126 Fed 127, 60 CCA 675; In re Lessard (CC) 134 Fed 305; In re Carver (CC) 142 Fed 623; In re Scott, 144 Fed 79, 75 CCA 237; Moore v United States, 159 Fed 701, 86 CCA 569; Ex parte Lewkowitz (CC) 163 Fed 646; Dillingham v Booker, 163 Fed 696, 90 CCA 280, 18 LRA (NS) 956, 16 Ann Cas 127; Ex parte Rock (CC) 171 Fed 240; Ex parte Hubbard (CC) 182 Fed 76."

To the same effect is Ex parte Dostal, 243 Fed 664, 669 (ND Ohio) (1917):

"It is settled law that a minor, who enlists without the written consent of a parent or guardian, when such consent is required, becomes a soldier. His enlistment is not void, nor is it voidable in any event by him. He may be released from the service by a timely application of the parent or guardian having a superior right to his custody or control. But this application must be made with reasonable diligence, after the parent or guardian has acquired knowledge of the actual enlistment, and before an offense has been committed by him. After an offense has been committed by the minor against the military law, and especially after he has been placed under arrest and charges have been preferred against him, it is too late for the parent or guardian to oust the jurisdiction of the military authorities by an application to the civil. courts for a writ of habeas corpus. See the following: Ex parte Grimley, 137 US 147, 11 Sup Ct 54, 34 L ed 636; In re Morrissey, 137 US 157, 11 Sup Ct 57, 34 L ed 644; Ex parte Hubbard (CC) 182 Fed 76; Ex parte Dunakin (DC) 202 Fed 290; Dillingham v Booker, 163 Fed 696, 90 CCA 280, 18 LRA (NS) 956, 16 Ann Cas 127; US v Williford, 220 Fed 291, 163 CCA 273; McGorray v Murphy, 80 Ohio St 413, 88 NE 881, 17 Ann Cas 444."

The enlistment of a minor of the statutory age, even though without the required consent, is valid, and he thereby becomes *de jure* and *de facto* a soldier, subject to military jurisdiction. A nonconsenting parent is not entitled to custody of the minor prior to the expiation of the latter's crime, when the parent has not sought his discharge until after commission of an offense triable by. court-martial and punishable by military law. The parent's right to the minor's custody and service is, under those circumstances, subordinate to the right of military authorities to hold the minor soldier to answer for his crime. Ex parte Beaver, 271 Fed 493 (ND Ohio) (1921); Ex parte Rush, 246 Fed 172 (MD Ala) (1917); Dillingham v Booker, 163 Fed 696 (CA 4th Cir) (1908).

See also Hoskins v Dickerson, 239 Fed 275 (CA 5th Cir) (1917); Ex parte Foley, 243 Fed 470 (WD Ky) (1917); United States v Brown, 242 Fed 983 (ED Pa) (1917); Ex parte Avery, 235 Fed 248 (ED NC) (1916); United States v Reaves, 126 Fed 127 (CA 5th Cir) (1903); In re Miller, 114

Fed 838 (CA 5th Cir) (1902); In re Dowd, 90 Fed 718 (ND Calif) (1898). And see Barrett v Looney, 252 F2d 588 (CA 10th Cir) (1958), cert den 357 US 940, 2 L ed 2d 1553, 78 S Ct 1390, decision below 158 F Supp 224 (Kans) (1957).

Accordingly, we hold that no demand having been made for accused's discharge until after he was being held on a charge of murder committed during his tenure as a soldier, court-martial jurisdiction over accused was not defeated because of lack of the required written consent to his minority enlistment. Thus, regardless of Mrs. Turner's relationship to accused, the assignment of error must be resolved adversely to him.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.