UNITED STATES, Appellee

v.

ROBERT A. RODRIGUEZ, Private–1, U. S. Army, Appellant

2 USCMA 101, 6 CMR 101

No. 365

Decided December 31, 1952

LT. COL. George E. Mickel, U. S. Army, and 1ST LT. John D. Calamari, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case, like United States v. Ornelas (No. 446), 6 CMR 96, decided this day, involves an issue of jurisdiction based upon petitioner's claim that he was not at any time legally inducted into the United States Army. Petitioner was brought to trial by general court-martial on a charge of desertion, based on an alleged unauthorized absence from August 22, 1943, to July 26, 1951. Prior to arraignment, defense counsel challenged the jurisdiction of the court on the theory that the accused, a Mexican citizen, had not been lawfully inducted into the service of the United States. The motion was denied and trial proceeded. The prosecution established its case through morning report extract copies showing the dates of original absence and return. Thereafter the accused took the stand. He testified that he was a citizen of Mexico who, however, had re-

sided in the United States continuously since 1918. In 1943 he registered pursuant to the terms of Selective Service legislation, and was called for induction at Fort MacArthur on July 23 of that year. He was assigned to Fort MacArthur for basic training and remained there on duty for approximately ten days. He then absented himself without leave and remained so absent until he surrendered at El Paso, Texas, on July 26, 1951.

The general court-martial which tried him found petitioner guilty of desertion and sentenced him to dishonorable discharge, total forfeitures, and confinement at hard labor for six years. Army reviewing authorities have upheld the findings and sentence. We granted the accused's petition for review in order that we might consider the question of jurisdiction.

If petitioner was not legally inducted

into one of the armed services, then this court-martial was without jurisdiction to try him for the offense of desertion. United States v. Ornelas, supra. Petitioner's objection to the court's jurisdiction is based on two grounds:

(1) That he was never adequately informed of his rights as a Mexican citizen in relation to Selective Service, and

(2) That he did not participate in an induction ceremony, never having taken the oath of allegiance.

We deal first with the effect of petitioner's citizenship upon his induction. At the outset we observe that the motion challenging jurisdiction below was predicated on the notion that petitioner was a citizen of a neutral foreign State, and that by virtue of his status as such, he should have been accorded certain specified rights at the time of or prior to induction. This Court may take judicial notice of the fact that, at the time of petitioner's induction, Mexico was in point of fact in a state of war with Germany, Italy, and Japan. 6 Dept. of State Bull. 505 (1942); Wigmore, Evidence, 3d ed, §§ 2566, 2567, 2572, 2574, and cases cited. Petitioner was, therefore, a citizen of a cobelligerent, not a neutral, nation. Nationals of Mexico who were residents of this country were, under the Selective Service Act, subject to induction. Cervantes v. United States, 163 F2d 294 (CA9th Cir). However, prior to the time petitioner was called to duty, the United States and the Republic of Mexico had entered into an Executive Agreement relating to the military service of nationals of one of the contracting countries residing in the other. Executive Agreement Series 323, January 22, 1943. This agreement provided in substance that, with certain exceptions not applicable here, nationals of Mexico residing in the United States "may be registered and inducted into the armed forces of the country of their residence on the same conditions as the nationals thereof unless otherwise provided herein." The classes excepted were officials  and employees of the contracting governments, students, and "border crossers"—none of which includes petitioner. The agreement also provided that "Nationals of each country who have been registered for or inducted into the Army of the other country in accordance with the military service laws of the latter and who have not declared their intention to acquire the citizenship of the country in which they reside shall upon being designated by the country of which they are nationals and with their consent be released for military service in its forces provided that this has no prejudicial effect on the common war effort." It is clear that, under both the Selective Service Act and the terms of the Executive Agreement, petitioner was fully subject to induction into the military service of the United States as a resident of this country. Further, under the terms of the Executive Agreement, it was not his, but rather his country's prerogative to obtain his release from American induction processes in order that he might serve with the Mexican armed forces.

The Director, Selective Service System, in Memorandum To All State Directors (I–422), Local Board Release (129), May 2, 1942, provided procedures whereby an alien, who had not declared his intention to become a citizen of the United States, and who was a citizen of a cobelligerent nation with whom a reciprocal agreement had been made, might be permitted to serve with the armed forces of the cobelligerent nation. If the procedures set up therein were followed, and the applicant was accepted for service by the cobelligerent nation, the memorandum provided further that the alien should be sent to an induction station of that nation. It is claimed by appellate defense counsel, with some support in the record, that petitioner was not advised of his rights as an alien under the memorandum mentioned above, and that the failure to advise him properly of those rights renders the Fort MacArthur induction proceedings invalid. Reliance is placed upon Machado v. McGrath, 193 F2d 706 (CA, DC Cir) and other Federal cases cited in that opinion.

The Machado case arose out of depor-

tation proceedings involving a citizen of Uruguay who was ordered to report for induction in 1944. As a citizen of a neutral country at the time of induction, Machado was entitled to, and in fact did, refuse military service. Under the terms of the Selective Service Act this refusal to serve barred him forever from becoming an American citizen. Machado was not informed of this prohibition at the time of induction. Because of his ignorance the court held that the refusal to serve did not constitute a bar to citizenship, citing Moser v. United States, 341 US 41, 95 L ed 729, 71 S Ct 553.

Conceding—which we do not—that Machado and Moser should apply to render invalid an induction proceeding wherein a *neutral* alien was not informed of his right to avoid service, those cases have no application here. This petitioner was a *cobelligerent* alien. He did not have the right to avoid service and yet to remain within the United States. His only right was to seek service with the armed forces of Mexico as an alternative—and that country retained the right to grant or to deny entry into such service. Fundamentally, too, the power to effect such a transfer belonged to the Republic of Mexico, not to petitioner. There is no intimation whatever in this record that petitioner desired to serve with Mexican forces rather than with those of the United States. Indeed, his only explanation for absenting himself without leave—the illness of his wife and the need to obtain funds for medical care—would indicate that he had no desire whatever to perform any sort of military duty. It is merely claimed that petitioner was not fully advised of his rights. In this respect, it is noteworthy that the alien involved in Machado could neither speak, read, nor write English. This petitioner had resided in America since the age of five—for some 25 years—had been educated in American grade and high schools, and appears to have understood English perfectly.

There is involved here no waiver of the right subsequently to seek American citizenship. Both Machado and Moser are based entirely on the understandable unwillingness of courts of the United States to hold that an alien has, without adequate advice as to consequences, taken action resulting in a waiver in perpetuity of his right to become an American citizen. We perceive no comparable policy which should require that a cobelligerent alien, such as Rodriguez, be informed in these premises of his right to seek military service with Mexico, and would dictate that a failure to do so must render invalid otherwise proper induction proceedings. Particularly are we blind to any such considerations in a situation where the alien has lived in the United States for 25 years and has given no slightest indication of a desire to serve with the armed forces of his native country.

Therefore, we find no merit in petitioner's claim that his status as an alien affected the legality of induction proceedings. If those proceedings were properly administered, petitioner was lawfully a member of this country's armed forces and fully subject to military law. This brings us to the defense contention that the induction proceedings were not properly executed for want of the oath, and that petitioner did not become a member of the United States Army. Admitting the complete accuracy of petitioner's testimony that he took no oath of allegiance, we do not believe that, under the peculiar circumstances of the case at bar, this constitutes a fatal defect.

The present case is readily distinguishable from United States v. Ornelas, supra. In that case, Ornelas testified that he did not at any time participate in an induction ceremony, and that he did not serve with the Army for any moment of time. Instead it was his contention that he merely took the required physical examination and returned immediately to his home in Mexico. Here, Rodriguez makes no claim that he did not participate in the induction ceremony, but only that he did not take the oath of allegiance. He did not object to service—in fact, he voluntarily entered upon the Army duty assigned. He proceeded to Fort MacArthur for basic training and remained in a military status, apparently without objection, for some ten days. Under

such circumstances, he is in no position to claim that he was not lawfully inducted. See Hibbs v. Catovolo, 145 F2d 866 (CA 5th Cir), cert den, 325 US 854, 89 L ed 1974, 65 S Ct 1085; Sanford v. Callan, 148 F2d 376 (CA 5th Cir), cert dismd 326 US 679, 90 L ed 397, 66 S Ct 6; Mayborn v. Heflebower, 145 F2d 864, 866 (CA 5th Cir), cert den, 325 US 854, 89 L ed 1975, 65 S Ct 1087. In the last of these cases the following language was used:

"We are of the further opinion that whether or not all formalities prerequisite to induction were observed, the subsequent conduct of the parties was such that the irregularities were cured or the right to invoke them was waived. It is manifest that the induction officers regarded applicant as a soldier at all times after the induction ceremony was completed, and appellant voluntarily accepted the benefits and assumed the obligations incident to membership in the armed forces. . . ."

We find no basis in the present record for holding that petitioner was not lawfully inducted. The court-martial, therefore, had jurisdiction to try the accused, Rodriguez, for the crime of desertion, and the proceeding resulted in valid findings and a valid sentence. The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.