UNITED STATES, Appellee

v

DON HALL, Private, U. S. Army, Appellant

17 USCMA 88, 37 CMR 352

*Gerald Kadish, Esquire*, argued the cause for Appellant, Accused. With him on the brief were *Lawrence Speiser, Esquire, Colonel Daniel T. Ghent, Captain Anthony F. Cilluffo*, and *Captain Frank J. Martin, Jr.*

*Captain Joel P. Schiff* argued the cause for Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski* and *Lieutenant Colonel David Rarick*.

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial, the accused was convicted of willful disobedience of a lawful order of his superior officer, in violation of Uniform Code of Military Justice, Article 90, 10 USC § 890, and sentenced to dishonorable discharge, forfeiture of $56.00 per month for twenty-four months, and confinement at hard labor for two years. Intermediate appellate authorities affirmed, and we granted accused's petition for review on issues involving military jurisdiction over him. In view of our disposition of the case, we need only consider the question whether he is an individual subject to the Uniform Code of Military Justice.

At the outset of the trial, defense counsel moved to dismiss the charge on the basis that the court-martial lacked jurisdiction over the accused. In support thereof, he offered a document from accused's service record which indicated he "refused to subscribe to the Oath of Allegiance or the Oath of Service in accordance with AR 601-270" and requested a security clearance certificate be executed at Fort Ord, California, as the proper forms were not available at the Induction Station. The document also bears the written notations, "PENDING CLASSIFICATION OF 1-A-O" and "IN HOLD BARRACKS 2341—*not* PROCESSED AT THE *point*." The document was executed by the Induction Station on November 10, 1965.

Accused testified that he had not been inducted into the service. He declared that he registered with the Selective Service System, received his induction notice, and reported to the Induction Station at Los Angeles, California. There, he "went through all the examinations and so forth." He was then sent to the room "where the swearing in was occurring, and they asked, 'Is there anybody here that refuses to be inducted?'" Accused immediately stood up "and was transported out of the room." There he "had to write out a statement as to why I refused."

Hall was then told to go to a local hotel and report back to the Station on the following day. He returned to the Station, "stayed there that day and that evening and I was put on a bus and sent to Fort Ord."

At Fort Ord Reception Center, "there was some sort of a mix-up about where they should put me." On discovery of the document in his file, "they said that they would investigate the matter and let me know before I was sent to basic training." Hall remained in the Reception Center for approximately a week. He was then sent to a unit for basic training. He contacted his new commanding officer and informed him that he was a conscientious objector. The commander immediately "suspended me from all training and he gave me a form for discharge to fill out." Approximately six months later, the ap-

plication for discharge was returned from the Department of the Army disapproved. Hall was then returned to the basic training cycle, given an order to draw his weapon, and refused to comply with it. Such gives rise to the charge of which he now stands convicted.

During the period he was at Fort Ord, Hall performed no military training duties. However, he wore the Army uniform, received pay on approximately six occasions, and caused his wife to receive a Class Q allotment. In addition, he did such tasks as sweeping the floor, making beds, and certain duties at the hospital. On the other hand, he did not apply for his wife to receive a military dependent's identification card. He accepted Army clothing because he "didn't have much choice" and applied for his wife's allotment as "It was either that or starve." He accepted pay because "I had other bills to take care of. I could not exist without it."

At the trial, both sides agreed the foregoing constituted the facts and the question to be resolved was solely one of law for the law officer. Based on the accused's testimony "that he received money and that he did perform some duties and he did wear the uniform," the law officer found a "sufficient basis to indicate that he . . . was inducted."

At this level, the Government concedes the accused was never actually inducted into the armed services. Under the applicable law, such takes place upon completion of whatever ceremony is prescribed by regulations as constituting induction. Billings v Truesdell, 321 US 542, 88 L ed 917, 64 S Ct 737 (1944); United States v Ornelas, 2 USCMA 96, 6 CMR 96. At the time in question, these regulations provided for the dividing point between civilian and military status to be a symbolic step forward. Army Regulation 601–270, paragraph 36a, August 2, 1965. As the Government admits, the record shows that accused was not even asked to take such step but, in accordance with the same directive, on indicating he would refuse to submit to induction, was taken elsewhere to complete a statement of his reasons for not entering the service in accordance with his obligation to do so. He was likewise permitted to depart and return the following day, at which time, when he yet refused to enter the Army, the same regulations indicate that the United States Attorney should have been notified and the individual's case handed over to the civil courts for disposition. In this instance, the accused, for unknown reasons, was instead shipped to Fort Ord, as if he had been inducted. Based on these uncontradicted facts, the Government concession that the evidence demonstrates the accused was never inducted into the service appears clearly proper. See United States v Ornelas, supra.

Nevertheless, we are urged to uphold military jurisdiction over the accused on the basis that, though actual induction is lacking, such was waived by his actions while at Fort Ord, i.e., that he there wore the uniform, received pay, obtained an allotment for his wife, and performed some duties, albeit menial in nature. To support this contention, the Government relies upon our decisions in United States v Scheunemann, 14 USCMA 479, 34 CMR 259, and United States v Rodriguez, 2 USCMA 101, 6 CMR 101, as well as various Federal cases, including Mayborn v Heflebower, 145 F2d 864 (CA5th Cir) (1944), Hibbs v Catovolo, 145 F2d 866 (CA5th Cir) (1944), and United States v Mellis, 59 F Supp 682 (MD NC) (1945).

On the other hand, the accused points out that 50 USC App § 462, a portion of the Universal Military Training and Service Act, provides in pertinent part:

". . . No person shall be tried by court-martial in any case arising under this title (said sections) *unless such person has been actually inducted for the training and service prescribed under this title* (said sections) or unless he is subject to trial by court-martial under laws in

force prior to the enactment of this title." [Emphasis supplied.]

In United States v Ornelas, supra, we had occasion to construe the same provision of Selective Service legislation in a predecessor enactment to 50 USC App § 462, supra. There, the accused was likewise not inducted in the service, though jurisdiction was later asserted over him. Speaking for a unanimous Court, Chief Judge Quinn declared, at page 98:

". . . This statutory provision, when read in conjunction with Article of War 2(a) [now Code, supra, Article 2, 10 USC § 802], supra, requires the holding that petitioner was not subject to military law at the time of his absence unless he was, prior thereto, 'actually inducted' into the Army."

In that case, the Court found no induction took place. The undisputed facts indicated Ornelas reported for a physical examination, took it, and returned to his home in Mexico, undergoing no ceremony of entrance into the armed services. The need for such step in order to confer military jurisdiction was pointed up in our contemporaneous decision in United States v Rodriguez, supra. There, the accused likewise urged he was not subject to military jurisdiction, as his induction was defective in that he took no oath of allegiance and was purportedly not advised of certain of his rights as an alien draftee. Cf. Machado v McGrath, 193 F2d 706 (CA DC Cir) (1951). In holding Rodriguez subject to trial by court-martial, we said, at page 104:

"The present case is readily distinguishable from United States v Ornelas, supra. In that case, Ornelas testified that he did not at any time participate in an induction ceremony, and that he did not serve with the Army for any moment of time. Instead it was his contention that he merely took the required physical examination and returned immediately to his home in Mexico. Here, Rodriguez makes no claim that he did not participate in the induction ceremony, but only that

he did not take the oath of allegiance. He did not object to service—in fact, he voluntarily entered upon the Army duty assigned. He proceeded to Fort MacArthur for basic training and remained in a military status, apparently without objection, for some ten days. Under such circumstances, he is in no position to claim that he was not lawfully inducted."

The teaching of these cases and the decisions cited therein is that, in order to have military jurisdiction attach, there must be some sort of compliance with the induction ceremony required under the Act and regulations. A failure to comply with the formalities of this entry into service or other irregularities therein may well be cured by accused's subsequent conduct and tacit submission to military authority. United States v Scheunemann, supra; United States v Rodriguez, supra. But where an accused refuses to submit to induction; in fact does not participate in any ceremony at all; and continually thereafter protests the attempt nonetheless to subject him to military service, no jurisdiction over him can be held to have attached. As was said in Ver Mehren v Sirmyer, 36 F2d 876 (CA8th Cir) (1929), at page 880, "If he [the petitioner] had not been lawfully inducted, then the court-martial had no jurisdiction to carry on the proceedings which resulted in the judgment of conviction."

No case called to our attention by the Government holds to the contrary. In United States v Scheunemann, supra, we specifically pointed out, at page 483:

"In obedience to the order of his board and after the Army had found him acceptable for service, appellant underwent all ceremonies and requirements the Army had prescribed, including the oath. *He was, therefore, actually inducted.*" [Emphasis supplied.]

We accordingly held that, after twenty-one months of unquestioning military service, it was far too late

for the accused to claim irregularities in his entrance into the service were of jurisdictional proportions.

Likewise, in Mayborn v Heflebower, supra, the court pointed out, at page 866:

"We think appellant's quoted testimony *reveals that he was actually inducted on November 10, 1943.* . . . Each step in the induction process he took willingly and voluntarily, except that he declined to take the oath of allegiance. Under the express terms of the italicized portions of the regulations relating to the induction ceremony, the taking of the oath was not a prerequisite to induction. His compliance in all other respects with the procedure prescribed concluded the selective process and rendered him subject to military jurisdiction." [Emphasis supplied.]

Similarly, in Hibbs v Catovolo, supra, the accused underwent the regular induction procedure and only refused to take the oath, which was not a part of the prescribed ceremony. His subsequent conduct, indicating acceptance of military status, was held to constitute a waiver of any irregularity involved. A like situation was found to exist in United States v Mellis, supra.

All these cases undoubtedly stand for the proposition that one who undergoes the requisite in- duction ceremony may thereafter waive any irregularity therein by his submission to military authority, receipt of pay, wearing of the uniform, and similar circumstances indicating his acceptance of his new condition as a soldier. We have never questioned this principle. Indeed, in United States v Scheunemann, supra, we applied it, as we did in the *Rodriguez* case, supra, and pointed out it was supported "in an unbroken line of decisions in the Federal courts, during World War I, World War II, and the Korean conflict, and more recently in this Court." *Scheunemann*, supra, at page 485.

We cannot, however, as the Government urges, apply it to the situation before us, where concededly there was no induction at all, and the accused thereafter, though he accepted military pay and some benefits, never failed to contest his status and, from his arrival at Fort Ord, made it known that he had not been inducted. There may be such a doctrine as "constructive induction," but there must be something on which to construct it. See United States v King, 11 USCMA 19, 25, 28 CMR 243, 249. The Army cannot override an individual's refusal to be inducted so that "he may be forcibly inducted against his will." Billings v Truesdell, supra, at page 558. In such instance, a criminal offense is committed but it is "to be punished by the civil authorities and by them alone." *Id.*, at page 558.

The Government here concedes accused underwent no induction ceremony and was not actual- ly inducted in the Army. Overlooking his subsequent protests against military service, culminating in the charge before us, it attempts to base the power to try the accused on his acceptance of pay, the execution of an allotment, and wearing the uniform. But there are no mere irregularities to be cured here; here, there was admittedly a refusal to be inducted at all. United States v Ornelas, supra; Billings v Truesdell, supra. There is no room for application of the doctrine that accused's subsequent behavior cured earlier deficiencies in a ceremony which never took place. United States v Rodriguez, supra; Mayborn v Heflebower, supra. The accused should have been brought to the attention of the civil authorities for his actions. The attempt instead to introduce him into the military despite his protests was to no avail. Billings v Truesdell, supra. It did not confer the status of soldier upon him, and no jurisdiction to try him by court-martial was brought into existence. In consequence, we hold the accused to have been at the time of his trial, and at the present, a civilian not inducted into the armed forces and not a person subject to the Uniform Code of

Military Justice. His trial was a nullity.

The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Army. The charges are ordered dismissed.

Chief Judge QUINN and Judge KILDAY concur.