James C. **SCHULZ**, Plaintiff,

v.

Stanley R. **RESOR** et al., Defendants.

Civ. A. No. 69–C–353.

United States District Court,
E. D. Wisconsin.

Sept. 17, 1971.

Robert J. Lerner, Milwaukee, Wis., for plaintiff.

David J. Cannon, U. S. Atty., by Richard E. Reilly, Asst. U. S. Atty., Milwaukee, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, District Judge.

This is an action pursuant to Title 28 U.S.C. §§ 1331, 1361, and 2241 for permanent injunctive relief.

Plaintiff is a member of the United States Army Reserves assigned, since May 25, 1966, to Company C, 961st Engineer Battalion, Milwaukee, Wisconsin. On October 30, 1968, active duty orders were issued ordering plaintiff to report for active duty on December 3, 1968. The active duty order was issued because of plaintiff's allegedly unsatisfactory attendance (fifteen absences) at his reserve unit training meetings. Plaintiff alleges that his meeting attendance was satisfactory, and that even if it were unsatisfactory, the Army failed to abide by controlling Army regulations. Plaintiff maintains that on the basis of either of these two alleged grounds, the active duty orders were illegal and that defendants should be enjoined from enforcing them and should be compelled to enlist him in an appropriate reserve unit so that he might fulfill his remaining reserve obligation.

On July 22, 1969, on the basis of a verified complaint and affidavits and after a hearing in which all parties participated, I granted a temporary restraining order restraining enforcement of defendant's active duty order. On July 30, 1969, a hearing was held for a preliminary injunction. At that time the restraining order was continued and

the parties agreed that the plaintiff would be given an Army physical examination to determine whether he was physically qualified for retention in the Army. The physical examination was given and plaintiff was determined to be physically qualified. Subsequently defendants filed motions to dismiss under Rule 12(b) (1) and (6), Federal Rules of Civil Procedure, alleging that this court lacked jurisdiction over the subject matter and that in any case the complaint failed to state a claim upon which relief could be granted. On May 25, 1970, a written order was entered denying defendants' motions. Defendants now move for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. For the reasons set forth below, this motion is granted.

The nature of this matter necessitates that the facts and procedure surrounding plaintiff's absences from his reserve unit's training meetings and his call up to active duty be set out in some detail. On August 18, 1968, defendants attempted to inform plaintiff by the following letter that he would be ordered to active duty in that he had accumulated fifteen unexcused absences during that past year:

"1. Records of this unit indicate you entered the Armed Forces on 18 September 1963 and you have an obligation under (the Reserve Enlistment Program of 1963) to participate satisfactorily in unit training assemblies unless properly excused.

"2. A reservist, who has five or more unexcused absences in any 1-year period, will be ordered to active duty. You have fifteen (15) unexcused absences during the past year, as indicated below:

| | | | | | |
|---|---|---|---|---|---|
| 8 Aug 67, | UTA | #1 | 22 Oct 67, | MUTA | #2 |
| 16 Sep 67, | MUTA | #2 | 26 Mar 68, | UTA | #1 |
| 3 Oct 67, | UTA | #1 | 20 Jul 68, | MUTA | #2 |
| 10 Oct 67, | UTA | #1 | 21 Jul 68, | MUTA | #2 |
| 17 Oct 67, | UTA | #1 | 17 Aug 68, | MUTA | #2 |

"3. You have not been properly excused for the above listed training assemblies. Before headquarters can grant exemption, it must first be determined if you are physically qualified for retention in the Army Reserve. You have been found physically qualified for retention in the Army Reserve on your past physical which was 31 July 1968, with the 452D Gen Hosp, 6081 North Hopkins Street, Milwaukee, Wisconsin.

"4. In accordance with Department of the Army regulations you will be ordered to active duty in about 30 days.

"5. You have 30 days from this date to apply for a delay from entry on active duty or discharge. Paragraphs 15 and 17, DA Circular 135–10 contain standards for delay or discharge. Requests for delay must be submitted to this unit prior to the publication of active duty orders by Headquarters, Fifth U S Army."

Prior to August 17, 1968, the plaintiff had been sent warning letters by registered mail concerning his lack of participation after his absences on October 17 and 22, 1967 and July 20 and 21, 1968. Each of these warning letters listed all absences from the date of the letter to August 8, 1967, and stated that such absences could result in being called up for active duty unless sufficient excuses were forthcoming.

On October 30, 1968, plaintiff was ordered to active duty on December 3, 1968. On November 29, plaintiff petitioned for a review of that order. Pursuant to that review the commanding officer of plaintiff's reserve unit found that (1) the absence charged for August 8, 1967, should be disregarded since it occurred more than a year prior to August 17, 1968; (2) that only one absence should be recorded for September 16, 1967; (3) that no medical excuses had been presented for the absences at issue; (4) that on some occasions the unit adviser contacted plaintiff's residence by phone and was informed that the plaintiff was not home; and (5) that no absences had been made up. Ac-

tive duty was recommended. This recommendation was affirmed through the chain of command, and on March 1, 1969, the Delay Appeal Board of the U. S. Army Reserve Components Personnel Center ruled:

"5. * * * That the documentation submitted fails to qualify the applicant for mitigation or relief from his involuntary call to active duty.

"a. A detailed analysis of this case reveals that the administrative factors required to support an involuntary call to active duty for unsatisfactory participation have been consummated. However, a critical review of the administrative management procedures of this individual's unit should be conducted. These administrative shortcomings do not alter the fact that Private Schulz is clearly in direct violation of his enlistment contract and paragraph 12, AR 135-91, thereby rendering him eligible for this action.

"b. Private Schulz's 29 November 1968 appeal petition was unanimously viewed as a clever attempt to discredit the involuntary call to active duty action. However, the facts do not support the majority of the points presented in this petition, nor does the petitioner's unfounded interpretation of acceptable attendance policies warrant mitigation from this Board."

This recommendation was approved by the Secretary of the Army, and on July 10, 1969, by order of the Secretary, plaintiff was ordered to active duty.

Plaintiff by his complaint alleges that:

"6. Upon information and belief, the records inaccurately reflected the number of unexcused absences for the following reasons:

"a. The actual number of absences which should have been recorded for September 16, 1967 was 1, and not 2;

"b. The records failed to disclose that the plaintiff had made up six (6) absences in January of 1968;

"c. The alleged two unexcused absences for August 17, 1968 were outside the one year period which commenced on August 8, 1967;

"d. Upon information and belief, the plaintiff was present at the September 16, 1967 training session although he may not have signed the sheet which would have indicated his presence;

"e. The five unexcused absences dated March 26, 1968, July 20, 1968, and July 21, 1968, upon information and belief, should not have been designated unexcused because the plaintiff has and had valid medical excuses. His medical excuses are the result of surgery which was performed to his back on May 14, 1968 involving removal of a part of his left scapula.

* * * * * *

"8. Upon information and belief, with the exception of July 1, 1968, the plaintiff was not notified in person and in writing or by letter following each training assembly where the plaintiff was allegedly absent without authority and prior to the next following assembly, that he was absent without authority and the total number of absences without authority calculated for the one year period along with the implications of said alleged absences without authority, in violation of A.R. 135-01, paragraph 12e-(1) (a)."

For purposes of this motion, I shall assume without deciding that alternatively no absences subsequent to August 8, 1967, and prior to July 20, 1968, were chargeable against plaintiff, or that no absences prior to July 20, 1968, were chargeable.

I find that the following facts are now without dispute:

1. That plaintiff was absent from two meetings each on July 20, 21, and August 17, 1968, and one meeting on August 8, 1967.

2. That no medical excuse was submitted with regard to the July 1968 meetings prior to August 17, 1968.

(Plaintiff's records as maintained by defendants specifically state this to be the case, and plaintiff neither by complaint or subsequent representation denies this or alleges otherwise.)

3. That on July 23, 1968, two letters were mailed and delivered to plaintiff with regard to plaintiff's two absences on July 20, 1968. Each letter, after setting out the meeting in question missed, stated:

"2. It is the responsibility of an individual reservist to attend scheduled unit training assemblies unless properly excused. A reservist who has five or more unexcused absences in any one-year period will be ordered to active duty, active duty for training, or full time training, which will total 24 months. You currently have [10/11] unexcused absences during the past year, as indicated below:

\* \* \* \* \* \*

[Listing of dates and number of drills missed.]

"3. You have 10 days from the date of this letter to submit documents as to why this absence should not be counted as unexcused. Employment conflicts, overtime, schooling, and loss of income are not normally considered valid reasons for absence from training."

4. On July 31, 1968, two letters substantially identical to those of July 23 were mailed and delivered to plaintiff with regard to plaintiff's two absences on July 21, 1968. (Defendants have submitted photostatic copies of four registered letter receipts for July 23 and 31. Each of these receipts is signed with a signature which purports to be that of plaintiff and which appears to be identical to plaintiff's signature on an affidavit to this court. Plaintiff, in his complaint by information and belief, appears to deny receipt of these letters, but subsequent to the introduction by defendants of these letters and registered letter receipts, plaintiff has stood mute, making no representation that these documents are not correct.)

5. On August 18, 1968, a letter, set out earlier in this opinion, was sent to plaintiff in an attempt to inform him that he would soon be ordered to active duty. This letter was sent by registered mail, and after two attempted deliveries by the post office, it was returned to defendants.

In the past few years there have been an increasing number of reservists who when ordered to active duty because of unsatisfactory attendance at unit meetings have sought to find relief in the federal courts. See e. g. Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971); Ansted v. Resor, 437 F.2d 1020 (7th Cir. 1971); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); Gianatasio v. Whyte, 426 F.2d 908 (2d Cir. 1970); Byrne v. Resor, 412 F.2d 774 (3rd Cir. 1969); Agrati v. Laird, 440 F.2d 683 (9th Cir. 1970). These cases, which largely revolve around hair and dress styles, have largely adopted the view that:

" \* \* \* purely discretionary decisions by military officials which are within their valid jurisdiction will not be reviewed by this court. \* \*

\* \* \* \* \* \*

"[But when the military has] laid down their own procedures and regulations, those procedures and regulations cannot be ignored by the agencies themselves even where discretionary decisions are involved." Smith v. Resor, supra, 406 F.2d at 145.

▮ It is held in the Seventh Circuit that when a man opts for a six year reserve status in lieu of two years' active duty, such a reservist in signing his enlistment contract agrees to be subject to the applicable federal statutes and military regulations and consents to induction into active service should he fail to participate satisfactorily as a reservist. Ansted v. Resor, supra, 437 F. 2d at 1024. It is further held that discretionary decisions in accord with the requisite procedure as to satisfactory participation by the military are, depending on the circumstances, largely beyond judicial review. Compare Ander-

son v. Laird, supra, with Mielke v. Laird, 324 F.Supp. 165 (E.D.Wis.1971).

The following Army regulations are applicable in the instant case:

"9. Excused absences. a. Absences from scheduled unit training assemblies or ANACDUTRA (AFT) may be authorized by the unit commander for reasons of sickness, injury, emergency or other circumstances beyond the control of the member and substantiated by appropriate affidavits or certified by a doctor or medical officer, providing such documents are received within 14 days of the absence. Employment conflicts, overtime, schooling, and loss of income are not normally considered valid reasons for absence from training. * * *." A.R. 135–91.

"12. Unexcused absences from unit training assemblies. A member fails to participate satisfactorily when he accrues in any 1-year period a total of five or more unexcused absences from scheduled unit training assemblies as computed in b and c below.

"a. A member who fails to participate satisfactorily in this respect will be ordered to active duty for a period which, when added to his prior service on active duty, active duty for training, annual field training, or full-time training duty, will total 24 months.

"b. A member who, without proper authority, fails to attend a scheduled single unit training assembly (UTA) will be charged with one unexcused absence. A multiple unit training assembly (MUTA) is a combination of unit training assemblies; therefore, a member who, without proper authority, fails to attend any portion of an MUTA will be charged with one unexcused absence for each UTA equivalent not attended. * * *

"c. For purposes of counting unexcused absences, the '1-year period' will begin on the date of the training assembly from which the member is absent and will end 1 year later (e. g., if the unexcused absence occurs on 15 July 1968, the '1-year period' will end on 14 July 1969). When longer than 1 year elapses from the date of such absence, it no longer will be counted and the new 1-year period will begin on the date of the subsequent absence, if any. Any example of charging unexcused absences is shown in the table below:

| Date of unexcused absence(s) | Number of absences | Cumulative total in 1-year period |
|---|---|---|
| 10 Jul 1968 ⎱ (MUTA–4) .... | 2............ | 2 |
| 11 Jul 1968 ⎰ | 2............ | 4 |
| 10 Jul 1969 (UTA) .......... | 1............ | 3 |
| 10 Jul 1970 ............... | No intervening absences | 0 |
| 14 Aug 1970 (First day of MUTA–4.) | 2............ | 2 |
| 18 Sep 1970 (First assembly of MUTA–4.) | 1............ | 3 |
| 1 Mar 1971 (UTA) .......... | 1............ | 4 |
| 13 Aug 1971 (MUTA–2) ...... | 2............ | *6 |

* Over 4—report for order to active duty.

\* \* \* \* \* \*

"e. In addition to the orientation requirements specified in paragraph 13, the unit commander will—

"(1) Insure that following each scheduled training assembly (UTA or MUTA) from which a member is absent without authority, but prior to the next scheduled training assembly (except as provided in (2) below):

"(a) The member is contacted in person, if practical, and furnished with a letter of instruction (prepared locally) outlining his obligation to participate satisfactorily, stating the number of absences he has accrued and explaining the implications of additional unexcused absence from training.

"(b) If he is unable or it is impractical to establish personal contact, the member is furnished the letter of instruction by certified mail, delivered to addressee only, return receipt requested.

"(c) A copy of the letter of instruction and the Post Office receipt, if applicable, are filed in the member's Military Personnel Records Jacket as permanent documents.

"(2) If the absence(s) charged will result in a total accrual of five or more unexcused absences in a 1-year period, determine if any cogent or emergency reasons existed which prevented the member from attending. If no such reasons existed, he will forward the member's Military Personnel Records Jacket to the appropriate area commander or State adjutant general, requesting that he be ordered to active duty as prescribed in *a* above. \* \* " A.R. 135–9.

In the case before me it is clear that the plaintiff was properly subject to active duty provided he was properly charged with five or more unexcused absences within one year. Plaintiff contends, however, that none of the absences charged against him are valid in that (1) he made up the August 8, 1967, absence; (2) the July 20 and 21 absences were due to medical reasons;

and (3) the August 17, 1968, absences were outside the one year period. The issues of whether plaintiff made up the August 8 absence or whether the August 17 absences were outside the one year period need not be resolved. Plaintiff argues that the one year period commences with the first unexcused absence; defendants argue that the one year period dates back from the last unexcused absence. If plaintiff is correct in his assertion that the August 8, 1967, absence was not unexcused because it was made up, then the first unexcused absence would *not* be prior to August 18, *1967,* and thus the August 17, 1968, absences under plaintiff's theory of how to measure the "one year period" would be properly chargeable. The August 17 and July absences total six absences. On the other hand, if the August 8 absence was properly chargeable, then that one absence in addition to the four in July of 1968 would result in five unexcused absences.

■ The July absences were clearly unexcused under the controlling regulations. That plaintiff may or may not have had meritorious medical excuses, see Mielke v. Laird, supra, is of no moment for Army regulations clearly provide that such excuses must be submitted within fourteen days of the absence. During the month of July, plaintiff was warned four times by registered letter to submit excuses if he had them. Plaintiff failed to do so, and the record is devoid of any reason for this failure. As it is agreed that plaintiff was physically absent on July 20 and 21 and had no prior permission to be absent, the determination that these absences were unexcused was purely ministerial as opposed to discretionary. The warning letters sent to plaintiff concerning his absences at the July week end training sessions were in substantial compliance with Army regulations, and what variation there might have been with a strict literal reading of the regulations was not prejudicial in light of plaintiff's claims and the full military review subsequent-

ly given.  Smith v. Resor, 406 F.2d 141, 144 n. 3 (2d Cir. 1969).

■ It is clear then from the agreed facts and facts unchallenged by the plaintiff that plaintiff amassed at least five unexcused absences within a one year period and was thus subject to active duty pursuant to Army Regulation 135–91, ¶ 12–a.  The finding by the Delay Appeal Board, subsequently adopted by the Secretary of the Army "That the documentation submitted fails to qualify the applicant for mitigation or relief from his involuntary call to active duty," cannot be tampered with.

It is therefore ordered that the defendants' motion for summary judgment be and it hereby is granted.