UNITED STATES, Appellee

v

CHESTER E. KILBRETH, Private, U. S. Army, Appellant

No. 26,621

July 6, 1973

*Captain Thomas G. Parachini* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain Peter M. Davenport.*

*Captain Richard A. Karre* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III, Captain Richard L. Menson,* and *Captain Glenn R. Bonard.*

## OPINION OF THE COURT

QUINN, Judge:

The question presented by this appeal is whether the accused was subject to court-martial jurisdiction.

Pursuant to 10 USC § 673a, as implemented by Executive Order No. 11366, 3 CFR 676 (1966-70 Comp) and by AR 135-91, the accused was ordered to active duty because of unsatisfactory participation in training meetings of his Arkansas National Guard unit, in the period from January 18 through March 15, 1970. The accused, however, did not report. Eventually he was apprehended, placed under military control, and brought to trial before a special court-martial on a charge of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. The accused pleaded guilty and was sentenced to reduction to E-1 and confinement at hard labor for 150 days. Confinement was suspended, and the accused was ordered to an Army unit at Fort Hood, Texas. Again, he did not report as directed. On his later return to military control, he was charged with unauthorized absence and the charge was referred for trial by a special court-martial.

At trial, defense counsel moved to dismiss the charge on the ground the accused was denied due process of law in issuance of the original order to involuntary active duty. It was contended that procedures prescribed by AR 135-91 as to the determination of unsatisfactory performance were not followed, with the result that the accused was not properly a member of the Army, and, therefore, was not subject to the Uniform Code.

Section 673a of Title 10, United States Code, empowers the President to call to active duty a member of the ready reserve who is not "participating satisfactorily" in his unit activities. The power has been delegated to the Secretary of Defense, who, in turn, delegated it to the Secretaries of the military departments. Army Regulation 135-91 defines the nature of unsatisfactory service for Army reservists and prescribes the procedures to determine delinquency and to issue a call-up order. Under § 673a, "appropriate consideration" must be given to the reservist's "family responsibilities."

During the period material to this appeal, paragraph 12 of AR 135-91 provided that five or more unexcused absences from scheduled training assemblies within 1 year subjected a reservist to call to active duty. An absence initially unauthorized could be excused later on the submission of appropriate "documentation" of a reasonable excuse. Paragraphs 9a and 12e(2), AR 135-91. See also Schatten v United States, 419 F 2d 187 (6th Cir 1969); Schulz v Resor, 332 F Supp 708, 709 (E D Wisc 1971); Form 1AA 830, 30 June 1969, captioned "Letter of Instruction - Obligation to Participate Satisfactorily." Besides "orientation" advice at the time of enrollment as to the consequences of unexcused absences, paragraph 13, AR 135-91, which advice was given to the accused, the regulation required that, after every unexcused absence and before the next scheduled training assembly, the unit furnish the reservist with a letter of instruction. The letter was required to set out "the number of absences he has accrued" and explain "the implication of additional unexplained absences from training." Paragraph 12e(1)(a), AR 135-91. The regulation also required that when a reservist was certified for call to

active duty for unsatisfactory participation, he had to be informed "of his right to appeal this order to active duty." Paragraph 14b(1), AR 135-91.

■ The accused testified that no one ever spoke to him and he never received "anything . . . concerning missed meetings." He further testified that he never received "any notification" that he could appeal the order to active duty. Trial counsel acknowledged that the Government had no copy of any letter of instruction to the accused, and he represented to the trial judge that if a First Sergeant Hughes were called as a witness, he would testify that he "feels that because this has been the first case . . . no warning letters were sent out." No evidence was introduced to rebut or impeach the accused's testimony denying notification of the right to appeal.

Appellate government counsel acknowledge that federal civilian courts have held that the failure to comply with essential procedural requirements in the call-up of a reservist for unsatisfactory participation in reserve training constitutes a denial of due process and invalidates the order to active duty. See Schatten v United States, supra; Smith v Resor, 406 F2d 141 (2d Cir 1969). In fact, it appears that at least some army commands regarded strict compliance with the requirement for letters of instruction as so crucial to the validity of a call-up as to refuse orders to active duty when predicated upon warning letters that were on obsolete forms. See O'Mara v Zebrowski, 447 F2d 1085, 1087 (3d Cir 1971). However, government counsel contend that the accused was not prejudiced by the failure to comply with the regulation, and is, therefore, not entitled to relief. See Antonuk v United States, 445 F2d 592 (6th Cir 1971); Winters v United States, 281 F Supp. 289 (ED NY 1968), aff'd 390 F 2d 879 (2d Cir 1968), cert denied, 393 US 896. The record does not support the contention.

In Winters v United States, supra, one of the principal cases relied upon by the Government, the transcript of trial demonstrated the unlikelihood of the existence of any circumstance that could reasonably affect the decision to order the accused to involuntary active duty. Here, for at least part of the period of the alleged unexcused absences, the accused resided with his wife in Kennett, Missouri. His reserve unit was located approximately 50 miles away in Piggott, Arkansas. In these circumstances, family responsibilities could reasonably account for one or more of his absences from scheduled meetings. Had he been given the required warning letter, which especially "urged" him to present evidence of an excuse such as "sickness, injury, emergency or other circumstances beyond . . . [his] control," he might reasonably have done so and had his absence excused. Similarly, Antonuk v United States, supra, does not support the Government's claim that the accused was not prejudiced by its failure to comply with its own regulation. Antonuk, like the accused, was not informed of the right to appeal from the order to active duty, but, unlike the accused, Antonuk did, in fact, initiate proceedings that resulted in consideration of all substantive matters he presented in excuse by the officials, who, under the regulation, were responsible for review of the order to active duty. The evidence in this case demonstrates that not only was the accused never informed of his right to appeal, but that he never in fact appealed, and never had the opportunity to present to the officials competent to consider an appeal, any excuse he may have had for any missed meeting. We conclude, therefore, that the Government's failure to follow its own positive commands were prejudicial to the accused in his call-up to active duty.

■ ■ Left for consideration is the effect of the accused's plea of guilty at the first court-martial and his receipt of orders to report to Fort Hood. On the post-trial review, the SJA reasoned that, at least after his first court-martial, the accused "was well aware that he had been ordered to active duty and that he was subject to orders assigning him to Fort Hood." The difficulty with this approach is that the evidence falls far short of demonstrating that after the accused came under military control, his "behavior cured earlier deficiencies" in the proceedings by which the Government attempted to change his status from reservist to an active duty member of the Army. United States v Hall, 17

USCMA 88, 92, 47 CMR 352, 356 (1967). While the plea of guilty would appear to constitute an admission of status and thereby imply waiver of any defect in the procedure by which the status was attained, the accused testified that the conviction was still on appeal at the time of his second trial. The ground of the appeal was not specified, but there is matter to indicate that the accused did not intend to waive his right to object to the military's assertion of jurisdiction over him. Thus, the accused asserted in the post-trial review of this case that he had valid and reasonable excuses for at least some of the missed meetings and that he was "not properly in the Army."

As to the effect of his acceptance of the order to report to Fort Hood, we cannot conceive this act, under the circumstances of its occurrence, as proof that he knowingly and voluntarily waived his right to challenge his status as a person subject to the Uniform Code. United States v Hall, supra.

The decision of the Court of Military Review is reversed. The findings of guilty and the sentence are set aside and the charge is dismissed for lack of jurisdiction over the accused.

Chief Judge DARDEN and Judge DUNCAN concur.