**UNITED STATES**

v.

**Private First Class Gary D. ARTHUR, 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, U. S. Army, U. S. Army Personnel Control Facility, U. S. Army Training Center and Fort Ord, Fort Ord, California 93941.**

**SPCM 10137.**

U. S. Army Court of Military Review.

Sentence Adjudged 13 March 1974.

Decided 30 Dec. 1975.

Appearances: Appellate counsel for the Accused: CPT Frederick G. Boynton, JAGC; CPT Gordon R. Denison, JAGC; LTC James Kucera, JAGC; COL Victor A. De Fiori, JAGC. Appellate counsel for the United States: CPT Keith H. Jung, JAGC; CPT Joel M. Martel, JAGC; LTC Donald W. Hansen, JAGC.

OPINION OF THE COURT

FELDER, Judge:

The appellant was convicted by a special court-martial with members of absence without authority from 22 July 1969 to 4 October 1973 in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was sentenced to a bad-conduct discharge, which was approved by the convening authority.

The appellant assigns as error the denial by the military judge of the motion by the defense to dismiss the charge for lack of jurisdiction. He claims the prescribed regulatory procedures were not followed in inducting him in the Army and therefore, that he was not subject to the Uniform Code of Military Justice.

The appellant joined the Army National Guard in the State of Washington on 2 March 1964 for a period of six years. He served on active duty for training from 5 May 1964 to 4 September 1964. Afterwards, he was returned to the Washington National Guard to fulfill his six-year military obligation. He subsequently moved to the State of California. Because of continued absences from training assemblies, he was discharged from the Washington National Guard on 22 November 1965. He was ineligible for priority induction because his wife was pregnant, so he was classified 3A and transferred to the Ready Reserve Mobilization Reinforcement Pool, U.S. Army Administration Center, St. Louis, Missouri.

In that capacity, the appellant was no longer required to attend training assemblies. His training obligation was limited to attending annual active duty training or "summer camp". He testified that in the summers of 1966 and 1967 he received advance orders instructing him to report to summer camp in Ogden, Utah, upon receipt of further orders. He also testified he did not receive additional orders and, consequently, never reported to summer camp. Because of his failures to attend annual active duty training, he was certified to the Selective Service Board for priority induction and on 15 February 1968 was inducted in the Army for two years.[1]

1. Pursuant to Title 32, Code of Federal Regulations, Section 1631.8, whenever a member of the Ready Reserve fails to serve satisfactorily, he is subject to priority induction regardless of his selective service classification.

Army Regulation 135–90, dated 9 May 1962, governed requirements for satisfactory completion of service obligation by members of the Ready Reserve Mobilization Reinforcement Pool and set forth enforcement procedures to be used when they failed to do so. Paragraph 7 of the Regulation provided that when a member failed to attend annual active duty training, his Corps or Area commander would cause an investigation to be conducted to determine if he was notified in sufficient time to comply, and whether or not emergency or other cogent reasons existed for his absence. Upon determining that the member was notified in sufficient time to comply, and that no justifiable reasons existed for his absence, the commander would consider alternative measures such as ordering him to active duty or reducing him in grade and administratively discharging him. When all reasonable efforts fail to induce satisfactory participation, the commander would certify the reservist to the local Selective Service Board for priority induction.

The Government presented no evidence at trial to show compliance with the requirements for investigating the appellant's absences before certifying him for priority induction. Instead, it averred that the appellant by reporting for induction, complying with the formalities for entry into service, receiving pay and allowances, soliciting assistance from the Red Cross, wearing the uniform, performing military duties, obeying orders, accepting a promotion and medical benefits for his family and himself, and by similar conduct indicated he accepted his new status as a soldier and thereby waived any induction irregularities. *United States v. Scheunemann*, 14 U.S.C.M.A. 479, 34 C.M.R. 259 (1964); *United States v. Wilson*, 44 C.M.R. 891 (A.C.M.R.1971); *accord, United States v. Hall*, 17 U.S.C.M.A. 88, 37 C.M.R. 352 (1967).

Conversely, the appellant contended at trial that he tried every means available to avoid being inducted. He testified that he

did not receive any communication informing him that his reserve participation was unsatisfactory; that the authorities of the local Selective Service Board advised him that he could not appeal the induction order (this assertion is supported by a letter from the State Director of the Selective Service System that was introduced into evidence as a defense exhibit); that he protested the induction to officials of the Army Reserve and Armed Forces Examination and Entrance Station prior to coming on active duty; that he could not afford an attorney to fight his induction; and that he signed a document acknowledging his service obligation under threat of becoming a draft evader and going to jail. He further testified that after he came on active duty he protested at the reception station; that he sought assistance from a judge advocate, finance officer and classification and assignment officer; that he applied for a medical profile and a hardship discharge; that he was continually absent without authority between August 1968 and June 1969;[2] and that he wore the uniform and accepted pay only because he had to do so.

The military judge ruled that solely because the appellant had been "actually inducted", that is, participated in the induction ceremonies, he was subject to military jurisdiction.

■ The facts relating to jurisdiction are not in dispute. Because the Government elected not to present any evidence to show compliance with its regulations before certifying the appellant for induction, the only issue was whether, on the facts presented, the appellant waived the induction irregularities. This was an interlocutory question of law that should have been decided by the trial judge. *United States v. Hall*, 17 U.S.C.M.A. 88, 90, 37 C.M.R. 352, 354 (1967); *United States v. Bowie*, 34 C.M.R. 808, 814 (A.F.B.R.1964); see Paragraphs 57 a and b, Manual for Courts-Martial, United States, 1969 (Revised edition).

2. Documentary evidence in the record of trial indicates the appellant was reassigned to a unit at Fort Lewis, Washington, on 29 June 1969 after having been dropped from the rolls. He was not tried for these absences.

The evidence in this case demonstrates the appellant's protest to his being inducted began at the time he received the induction notice and continued after he came under military control. Unlike *Scheunemann*[3] and *Wilson*,[4] his behavior did not cure earlier deficiencies in the proceedings by which the Government attempted to change his status from a reservist to an active duty member of the Army. He should not be condemned for receiving emoluments of service and complying with military orders and directives; otherwise, he would have been denied sustenance and possibly confronted with added criminal charges.

The Army is held to strict compliance with its own regulations before jurisdiction may be asserted at a court-martial. *United States v. Brown*, 23 U.S.C.M.A. 162, 165, 48 C.M.R. 778, 781 (1974); *United States v. Kilbreth*, 22 U.S.C.M.A. 390, 392, 47 C.M.R. 327, 329 (1973). If the commander had conducted an investigation and determined that the appellant had not received the orders directing him to report for active duty training during the summers of 1966 and 1967, the appellant's absences would have been justified and excusable. *See* Paragraph 171 *b, Manual, supra; accord United States v. Moore*, 44 C.M.R. 496 (A.C.M.R.1971). Under those circumstances, the Government would not have had jurisdiction to try him.

The Government had the burden of proving it had jurisdiction over the appellant. *United States v. Barrett*, 23 U.S.C.M.A. 474, 50 C.M.R. 493, 1 M.J. 74 (1975); Paragraph 44f(3), *Manual, supra*. It did not satisfy its burden by affirmatively showing either compliance with essential procedural requirements to investigate the appellant's absences before certifying him for priority induction or that the appellant acquiesced in his military status and waived the induction irregularities.

For the foregoing reasons, the Court finds the proceedings, finding and sentence invalid and the same are hereby declared void. The charge is dismissed.

Senior Judge JONES and Judge O'DONNELL concur.

---

3. *Scheunemann* contested military jurisdiction over him because of his alien status. He served twenty-one months of his obligated two-year term of service before he left his unit without authority. After induction he never pursued any administrative remedy to test the validity of his induction or to secure his release.

4. *Wilson* claimed he was not subject to military jurisdiction because he did not take the required ceremonial step forward or the oath of allegiance during induction. He served for approximately three and one-half months before absenting himself from his unit without authority. There is no evidence that he took any formal action to contest his military status until he raised the matter as a defense at his court-martial.