UNITED STATES, Appellee,

v.

Private (E–2) Gregory W. WAGNER, SSN 371–68–8375, United States Army, Appellant.

CM 433607.

U. S. Army Court of Military Review.

20 July 1977.

Colonel Alton H. Harvey, JAGC, Lieutenant Colonel James Kucera, JAGC, Captain Lawrence E. Wzorek, JAGC, and Captain Stephen D. Halfhill, JAGC, were on the pleadings for appellant.

Major John T. Sherwood, Jr., JAGC, Captain Lee D. Schinasi, JAGC, and Captain William A. Poore, JAGC, were on the pleadings for appellee.

Before JONES, FULTON and FELDER, JJ.

## OPINION OF THE COURT

JONES, Senior Judge:

The appellant was convicted of three specifications pertaining to involvement with heroin in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.[1] With the three offenses being treated as one for punishment purposes, the court members sentenced the appellant to a bad-conduct discharge, forfeiture of $300.00 pay per month for 24 months, confinement at hard labor for two years and reduction to the lowest enlisted grade. The convening authority approved the sentence.

### I

We are primarily concerned with the jurisdictional problem arising out of events surrounding the appellant's enlistment in the Army. Our resolution of the case is aided to a great extent by the fact that this issue was litigated at length at trial, obviating the need for the speculation and invoking of presumptions usually attendant to decisions of this nature. *See, e. g., United States v. Catlow,* 23 U.S.C.M.A. 142, 143, 48 C.M.R. 758, 759 (1974).

In support of his motion to dismiss for lack of jurisdiction the appellant testified that he had been arrested in Michigan in May of 1974 for carrying a concealed weapon in the trunk of his car. A week later he appeared in court on this felony charge, was arraigned, and provided with an appointed attorney. At a subsequent meeting, attended by this attorney, the appellant and his mother, the attorney indicated there was a possibility that he could arrange to have the charge dropped if the appellant were to join the Army. The attorney told appellant that he would check with the prosecutor concerning this option.

■ The stipulated testimony of both the prosecuting attorney and the appellant's attorney,[2] which was considered by the military judge on this issue, confirms that it was standard procedure in that county to give young men, who were charged with offenses not considered to be "heinous", the option of joining the Army in lieu of prosecution. The stipulations also point out that this program was conducted with a view toward helping these people and that there was no pressure to enlist exerted on them by the prosecutor.

The local policy was followed in this case. Appellant further testified that the prosecution offered this type of arrangement to him through his counsel who suggested that he visit the recruiter in Coldwater, Michigan. The appellant indicated that he really did not wish to join the Army but that he did not want to risk going to jail either. Moreover, he stated that his parents were in favor of his enlisting to avoid having a criminal record.

---

1. As the trial occurred prior to 3 July 1976, the equal protection standard announced in *United States v. Courtney,* 1 M.J. 438 (1976), does not apply. *United States v. Jackson,* 3 M.J. 101 (C.M.A. 1977). We have held action on this case in abeyance pending the decisions in *Courtney* and *Jackson.*

2. In a second assignment of error the appellant asserts that the military judge erred to his prejudice in failing to grant his request to require the personal appearance of these two non-military witnesses. We disagree. There is no question of the right of an accused to compel the attendance of witnesses in his behalf. Article 46, UCMJ, 10 U.S.C. § 846; *United States v. Jouan,* 3 M.J. 136 (C.M.A.1977). However, that right is not absolute but is dependent on the relevancy and materiality of the testimony. *United States v. Carpenter,* 1 M.J. 384 (1976).

In the instant case the ultimate question was one of recruiter misconduct, not one of coerced enlistment in violation of the regulation. Even though the witnesses' testimony could have established the void enlistment condemned in *United States v. Catlow,* 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974), their testimony would not have been relevant to the question of recruiter misconduct, a necessary condition to preclude a constructive enlistment. There was not the slightest intimation that the witnesses had any knowledge of such misconduct, or were otherwise prepared to testify on that subject. Thus, notwithstanding the relevancy of their testimony on the question of a coerced enlistment, it is the relevancy on the other issue that matters. As their testimony was not relevant to recruiter misconduct, the military judge did not abuse his discretion in declining to compel the attorneys to appear.

The appellant first appeared at the recruiting office on 23 May 1974 at which time a preliminary form was completed and arrangements were made for him to take the preenlistment mental examination on 30 May. He did not divulge the existence of the pending criminal charge during this initial visit to the recruiting office and there is no evidence that the recruiters were aware of it at that time. However, sometime after taking the mental examination on 30 May, the appellant told the recruiter, Staff Sergeant Olds, about the concealed weapon offense.

At this point Sergeant Olds told the appellant that because of the regulations, he had no choice but to suspend processing of his enlistment application until such time as "the court took proper disposition on the case."[3] Sergeant Olds further testified that he did not renew preparation of the paperwork necessary to enlist the appellant until after he received a phone call from the prosecuting attorney on 13 June indicating that the charge had been dropped. A letter confirming the fact that an "Order of Nolle Prosequi" had been entered in the appellant's case was obtained and inserted in his file.[4] The appellant entered active service on 18 June.

In light of his action when first apprised of the pending charge, we accept as sincere and truthful the recruiter's repeated statements that he attempted to follow the letter of the regulations. Furthermore, we believe his testimony concerning the fact that he had no knowledge of the deal in this case or of any standing arrangement with either the prosecutor or appellant's defense attorney to enlist those under charges. Moreover, the appellant stated that, to the best of his knowledge, the judge who granted the prosecution's request to drop the charges had no idea of his enlistment in lieu

of prosecution. Thus, we find that only the two attorneys and the appellant and family played an active and knowing role in this arrangement.

From the foregoing facts, which are essentially undisputed, it appears that the appellant's entry onto active duty was indeed contrary to the pertinent enlistment regulation. Footnote 2 to Line S of Table 2–6 of Army Regulation 601–210, Personnel Procurement, Regular Army Enlistment Program (May 1968) (Change 8, 24 June 1971), specifically precludes the enlistment of:

> "Persons, who, as an alternative to further prosecution, indictment, trial or incarceration in connection with the charges . . . are granted a release from the charges at any stage of the court proceedings on the condition that they will apply for or be accepted for enlistment in the Regular Army."

Paragraph 4–11.1 of the regulation prohibits recruiters from participating directly or indirectly in such arrangements and from giving any impression that the Army condones this type of practice.

This case also presents the type of coercion, albeit to a lesser degree, attendant to the enlistment which was found and condemned in *United States v. Catlow, supra.*[5] While the appellant admitted that no one ever told him that he was definitely going to jail, he stated several times that he did join the Army against his will to avoid that possibility.

We will accept, for the purpose of this review, that appellant's enlistment was "void at its inception." *United States v. Barrett,* 23 U.S.C.M.A. 474, 475, 50 C.M.R. 493, 494, 1 M.J. 74 (1975); *United States v. Catlow, supra* at 145, 48 C.M.R. at 761. Therefore, the trial court necessarily lacked jurisdiction unless the appellant became a

---

3. *See* paragraph 4–11.1(a), Army Regulation 601–210, Personnel Procurement, Regular Army Enlistment Program (May 1968) (Change 18, 10 August 1973).

4. A copy of this order, dated 17 June 1974 and signed by the judge, was introduced at trial.

5. *Catlow* is distinguishable to some extent because in that case the coercion emanated from the civilian court itself, as it was the judge who offered Catlow the alternatives of jail or the Army. In the instant case the judge was apparently ignorant of the arrangement with the prosecutor which the defense had actively sought.

member of the Army by means of constructive enlistment effected prior to the offense. *Id.*

The United States Court of Military Appeals has repeatedly refused to invoke the doctrine of constructive enlistment at the urging of the Government when recruiter misconduct results in the enlistment of a person who would otherwise be disqualified. *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975); *United States v. Barrett, supra*; *United States v. Brown*, 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974). We perceive no evidence of any intentional circumvention of the regulations by the recruiter or other agents of the Government justifying application of this estoppel theory here. The appellant would have us find negligence on the part of the recruiter in failing to inquire into the reasons underlying the cessation of prosecution. This we decline to do. Furthermore, given the complexity of the recruiting regulations, and the workload of recruiting personnel, we seriously doubt that mere ordinary negligence could ever amount to the level of misconduct by a recruiter necessary to trigger application of the rationale of *Russo, Barrett* and *Brown*. *See United States v. Russo, supra* at 513, 50 C.M.R. at 652, 1 M.J. at 136–37; *United States v. Brogan*, 50 C.M.R. 807 (N.C.M.R.1975).

■ Thus, when the regulation's bar to entry into military service is removed [6] and the Government is not estopped from asserting the doctrine, constructive enlistment may be relied upon as a "jurisdictional base." *United States v. Barrett, supra* at 475, 50 C.M.R. at 494, 1 M.J. 74. In *Catlow* Judge Quinn, writing for the Court, recognized this possibility, but found the facts insufficient to support a finding of a constructive enlistment in that case. While *Catlow* did apparently accept pay and other benefits from the Army on occasion, he frequently protested his service and compiled a record replete with infractions and unauthorized absences indicating to the Court that he never served willingly in the military so as to accomplish a constructive enlistment. *See also United States v. Hall*, 17 U.S.C.M.A. 88, 37 C.M.R. 352 (1967).

■ The appellant's record presents a markedly different picture. He testified that after making the decision to enlist to avoid prosecution, he elected to sign up for a three-year tour as opposed to the minimum two-year obligation. He agreed to the additional year so that he could select the geographic area to which he would be assigned. The appellant stated that he initially chose Korea so that he could "straighten out without getting into trouble."[7] However, he later decided to pursue an offered advanced course in generator operation in lieu of going to the Orient. He received an accelerated promotion to Private E–2 and testified that he performed all his duties in the Army. In addition to accepting the normal benefits such as uniforms, pay, meals and the like, the appellant voluntarily availed himself of Army drug and alcohol counseling.

While in basic training the appellant, by his own concession, did not protest his presence in the Army.[8] He made no formal request to be discharged and only professed to have discussed the matter once—during a "casual talk" with a captain at Fort Bel-

---

**6.** Counsel for the appellant attach great significance to the fact that the charge was "Nolle Prossed" and not dismissed by the judge in the appellant's case. While they may be technically correct that under Michigan law the charge could conceivably be resurrected by new indictment, we do not find this distinction to be of substance as it affects the instant issue. When, as here, a judge issues this type of order at the request of the prosecutor, which results in cessation of the proceedings, the charge is no longer pending so as to preclude enlistment under the regulation.

**7.** Catlow, on the other hand, indicated that since he did not want to come in the Army, he hoped that if he misbehaved, he would be thrown out, 23 U.S.C.M.A. at 143, 48 C.M.R. at 759.

**8.** While not crucial to our decision, we note that the stipulated testimony of the appellant's mother, presented prior to sentencing, reveals her recollection to be that the appellant remarked several times during basic training that he "really liked" the Army and that "he might stay in the Service indefinitely."

voir. His only previous brush with military justice was one non-judicial punishment administered more than five months prior to trial.

We, therefore, find this case to be clearly distinguishable from *Catlow* and *Hall* on its facts. Appellant's actions and manifested attitudes toward the Army lead us to conclude that a constructive enlistment was effectuated after the disqualification was removed and prior to the offense. *See United States v. Scheunemann*, 14 U.S.C. M.A. 479, 34 C.M.R. 259 (1964). As a result, the court below had jurisdiction to try the appellant.

## II

 During his argument prior to sentencing, the trial counsel addressed the court members in part as follows:

"No, it's [the drug problem] not going to go away, and that's one of the valid purposes of punishments in court-martial, a deterrent value. We have got troops sitting out there right now who know this accused. They know Private Wagner and I would guess that some of his close buddies are waiting to see what happens this afternoon in this courtroom, are waiting to see if he is convicted and, if so, what kind of sentence he will receive. The deterrent value, gentlemen, is a very valid purpose for sentencing and also one of the purposes for punishment and rehabilitation."

This type of argument, stressing general deterrence was condemned by the United States Court of Military Appeals in *United States v. Mosely*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976). The Court also held in *Mosely* that not every invocation of this theory of punishment necessitates remedial action and in that case it tested for prejudice and found none. We find the argument here more aggravated than that made in *Mosely*. The trial counsel was in essence asking the court specifically to send the appellant's friends and associates a message in the sentence they

adjudged. *See United States v. Hill*, 21 U.S.C.M.A. 203, 44 C.M.R. 257 (1972). We will cure the prejudice accruing from this improper argument by reassessing the sentence.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated error and the entire record, the Court affirms only so much of the sentence as provides for confinement at hard labor for 18 months, forfeiture of $300.00 pay per month for 18 months, and a bad-conduct discharge.[9]

Judge FELDER concurs. Judge FULTON not participating.

---

9. The Court recognizes that through clemency actions the forfeiture and confinement portions of appellant's sentence were remitted prior to this decision.